### BALDWIN v. LOCOMOBILE CO. OF AMERICA.

(Supreme Court, Appellate Division, Second Department. March 24, 1911.)

HIGHWAYS (§ 184*)—AUTOMOBILES—CONTRIBUTORY NEGLIGENCE.

 Plaintiff injured by the skidding of an automobile at a race which he was attending *held* guilty of contributory negligence, so as to prevent recovery therefor.

 [Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 471–474; Dec. Dig. § 184.*]

 Woodward and Hirschberg, JJ., dissenting.

Appeal from Trial Term, Queens County.

Action by Ralph S. Baldwin, an infant, by Winfield H. Baldwin, his guardian ad litem, against the Locomobile Company of America. On reargument of defendant's appeal from a judgment for plaintiff and an order denying a motion for a new trial. Reversed, and new trial granted.

Argued before HIRSCHBERG, BURR, CARR, WOODWARD, and RICH, JJ.

Stephen Van Wyck (Henry W. Goddard, on the brief), for appellant.

Henry M. Dater (George F. Elliott and Jay S. Jones, on the brief), for respondent.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

BURR, J. On November 6, 1906, the American Automobile Association was conducting a speed contest upon certain specified highways in Nassau county in connection with a prize offered by William K. Vanderbilt, Jr., to be competed for by motor vehicles representing America and foreign countries. It was being conducted with the consent of the board of supervisors of said county. Defendant had entered a car in the said competition, which was operated by its employé. A part of the course was over a road which was 50 feet in width, known as the "Jericho Turnpike." The racing cars proceeded northerly along this road until they reached another road intersecting it at right angles. Toward the right this road led to Huntington, and toward the left to Roslyn. The westerly portion of this road which led toward Roslyn was 70 feet wide. At this point it was necessary to make a sharp turn from the Jericho turnpike into the Roslyn road. To the north of this road there was another road 50 feet wide, extending toward Oyster Bay. The easterly and westerly lines thereof were a short distance to the west of the corresponding lines of the Jericho turnpike, so that the Oyster Bay road, although nearly so, was not exactly a continuation thereof. A vehicle coming north in the center of the Jericho turnpike could pass into and along the Oyster Bay Road without at all altering its course. During the progress of the race, and toward the close thereof, the car entered by defendant and operated by its employé in attempting to make this sharp turn was deflected from the course and ran into the opening of the Oyster Bay road for a short distance, striking plaintiff and inflicting upon him serious injuries. From a judgment entered upon the verdict of a jury awarding him compensation therefor, and from an order denying a motion for a new trial, this appeal is taken.

There is a conflict of evidence as to the exact place of the accident, and whether defendant's car left the course at all, as to the manner of the happening thereof, and whether the car "skidded" and deflected from its course, or came into collision with plaintiff because he with others had crowded over the line of the highway in their anxiety to obtain a good view of the contest. There is evidence, however, which the jury have accepted as credible from which negligence in the operation of the car could be found. Assuming this, we think that plaintiff has failed upon the other branch of the case. His testimony is somewhat conflicting, but, taking that view thereof most favorable to him, we think that his contributory negligence is affirmatively established.

At the time of the accident he was between 15 and 16 years of age. He resided in Norwalk, Conn., and came to the scene of the accident with his father and other relatives the night before the race was to take place for the express purpose of being a spectator thereof. He was somewhat familiar with the use of automobiles, and knew the tendency of cars going round a curve at a high rate of speed to "skid" or deflect from the course. He had observed during the progress of the race that every car as it passed round this curve had "skidded" more or less, and had turned up the road, and he estimated that he had seen this happen during this particular race about a hundred times. When he arrived at the course, he selected as his point of observation a

position on a horse block on the northeast corner of the road to Oyster Bay and the Roslyn and Huntington road. From the fact that the easterly line of the Oyster Bay road was a little to the west of the corresponding line of the Jericho turnpike, this was doubtless a most desirable place from which to witness the contest, since the spectator looking south could see the cars approaching for a long distance down the turnpike, and could also witness the skill of the operators in making the sharp turn into the Roslyn road. But it was also one of the most dangerous positions in case a car did "skid" or deflect from the course while making the turn, and particularly was this the case if one moved a short distance to the west of this horse block and into the roadway of the Oyster Bay road. Plaintiff not only knew of this danger from his own experience, but had been cautioned by his father about going over on the Oyster Bay road at all and had been told by him not to stay there because it was dangerous. Notwithstanding this, shortly before the accident, he left his father, crossed the Oyster Bay road, and went to the shop of the Diamond Tire Company. The purpose of his going there does not appear, but whatever it may have been it was accomplished, and he was returning to join his father on the corner where the horse block was situated. While so doing, a warning was given that a car was coming up the Jericho turnpike preparatory to making the turn. He looked and saw defendant's car coming 400 or 500 feet up the road. Notwithstanding that he saw it approaching at a high rate of speed, notwithstanding his knowledge of the dangers of the situation, notwithstanding the caution that had been given to him of the danger of being in the Oyster Bay road at such a time, he proceeded on his way without paying any further attention to the car, and, when about halfway across the road, was struck and injured.

Plaintiff's evidence was contradictory as to the distance that he was north of a line in continuation of the northerly line of the Roslyn road at the moment when he was struck. In his bill of particulars he states the distance to be from 6 to 10 feet; in his testimony he places it at 20 feet. There were other people standing in the road. At one time in giving his evidence he stated that he saw the flags waving and started to go out so that he could see the car, and passed two or three lines of people in getting up nearer the front of the crowd. At another time he stated that he was crossing the Oyster Bay road very nearly in the center of the crowd standing within the lines thereof, but that the crowd parted when it saw the car coming, so that at the time of the accident he was on the edge thereof. Whatever his exact position may have been, according to his own testimony he deliberately went into a place of known danger, in the imminent presence thereof, and without exercising the slightest precaution, when there was no necessity for him to do so unless it was to gratify his curiosity in observing the operator of the car make this dangerous turn. Even if he could be excused for attempting to cross the road just as the car was approaching, it is quite apparent that, if he had exercised a degree of care corresponding to that exercised by others standing in the road, he might have avoided the accident, as they did.

The judgment and order appealed from should be reversed and a new trial granted, costs to abide the event.

CARR and RICH, JJ., concur.

WOODWARD, J. (dissenting). I dissent from the opinion of Mr. Justice BURR, for it seems to me that, unless we are to hold that the most unfavorable view which the jury might have taken of the evidence is to be deemed established in spite of the verdict in favor of the plaintiff, there is no ground for a reversal of this judgment. On the 6th day of October, 1906, the plaintiff, then about 14 years of age, came from Norwalk, Conn., with his father, uncle, and other relatives, to witness the automobile race, commonly known as the Vanderbilt Cup Races, at Long Island, and took up a position at or near the junction of the highways known as the Oyster Bay road, Jericho turnpike, and East Norwich road. The board of supervisors of Nassau county had, by resolution, set apart certain highways for the purposes of these contests, among them being the Jericho road and the Roslyn road (so-called), the former road running generally north and south and the latter east and west. These roads crossed at right angles at East Norwich Corners, and as the races in question were conducted the cars came from the south, running north, turning at right angles to the west into the Roslyn road at the point of intersection. The Jericho road continues north from East Norwich Corners, with a deflection, and is known from that point as Oyster Bay road, and several other roads converge at or near East Norwich Corners. The Oyster Bay road was not included in the roads set apart for these races. It was open to general use as a highway, and the plaintiff's theory of the case, which has been accepted as the true one by the jury, and which is amply supported by the evidence, is that he had, after witnessing several events, gone with his brother and some cousins to a tire-repairing shop a short distance away, leaving his father and others at the junction of the roads upon a horse block from which they were watching the events, and that, when he had completed his errand at the repair shop, he started to return to the place where he had left his father; that, just as he had reached a point about one-half the way across Oyster Bay road, and while about 20 feet from the line of the Jericho road, a warning was given that the cars were coming, and that he continued on his way, when the crowd opened and the defendant's automobile, which was participating in the race, dashed into Oyster Bay road, instead of turning the corner into Roslyn road, and knocked him down, doing the injuries for which he has recovered a verdict of $7,000. It is urged on appeal, and members of this court seem to agree with the contention, that the plaintiff was guilty of contributory negligence as a matter of law, because it is said that he knew the danger, that his father had warned him not to remain in Oyster Bay road, and that this boy of 14 years of age was somewhat familiar with automobiles and knew of their tendency to skid in rounding corners, etc., and the defendant asserts that the plaintiff was not invited to be at these races. But the plaintiff did not require an invitation to be present in the open, public highways of this state. His

version is that he was in the act of crossing Oyster Bay road, where he had an absolute right to be, and the mere fact that his father had cautioned him not to remain in that road because it was dangerous did not in any manner detract from his lawful right to make use of that highway in going to the repair shop or in returning to his father. The place may have been dangerous for a boy of 14 in the apprehension of a father, simply because of the presence of a crowd and the excitement of the occasion, but it is nowhere suggested that the father had warned him against the danger of the automobiles leaving the course which had been set aside for their use, or that the father apprehended any such danger. The plaintiff testified that he had seen perhaps a hundred turns of this same corner made prior to the accident; that the defendant's own driver had made several of these turns in safety, and, if the cars followed the course in the usual order, the plaintiff was in a perfectly safe place, so far as the danger of being run over by the racing machines was concerned, and he had a right to rely upon the defendant operating its machine in such a reasonably safe manner that it would not leave the course. The defendant's car and many other cars had passed around this corner with safety. Why was it negligent for this plaintiff to cross Oyster Bay road, 20 feet outside of the course, assuming that he knew a car was approaching at a high rate of speed, when he was aware that the course ran into Roslyn road, and that all of the cars had previous to this time made the turn without accident? Was he as a matter of law bound to take notice that this particular car would not make the turn? Was he bound to assume that the defendant's driver would be negligent at this particular time, although he had not been on five or six other occasions? It appears conclusively from the evidence that there were many other people stationed in Oyster Bay road, and that which many persons are permitted to do, and which they do in the ordinary course of the day's doings, can hardly be said to constitute in one that absence of reasonable care which a person of ordinary prudence could or should have exercised under the circumstances. The many people who were in front of the plaintiff, for he testifies that he was crossing in the rear of the crowd, evidently did not regard the place as dangerous. They clearly did not anticipate that the defendant's driver would so operate his car as to drive headlong into Oyster Bay road, which was open and free to public travel, and yet we are asked to hold that this boy of 14, returning to his father after an errand which carried him across Oyster Bay road, was guilty as a matter of law of negligence contributing to his injuries. It might as well be urged that he was guilty of contributory negligence because he left his home in Connecticut to come to the races. If he had stayed at home, he would not have been injured from this particular automobile in this particular way, and it was culpably careless in him to bring his person within the jurisdiction of the state of New York on a day when the defendant wanted to make use of the highways of Long Island for an advertising exhibition of its motor car?

But it is said this boy was familiar with automobiles, that he knew

128 N.Y.S.—28

of the danger of the cars skidding in making turns under high speed, and this may all be conceded, but there is no evidence in this case that the defendant's car skidded, or that the accident was due to skidding. The evidence is that the car, instead of making the turn, which might have involved skidding, went nearly straight forward; that it followed the course of Jericho road and forward into Oyster Bay road, and the accident happened, not because of skidding, but because the defendant's operator did not have his car under sufficient control to make the turn which he was expected to make, and I undertake to say that not one man in an hundred who had watched the events of that day as this boy had done would have thought of being in danger at the point where this boy was standing, if he had seen the defendant's car coming down the Jericho road as this boy says he saw it. He had seen the turn made time after time, not only by the defendant's operator, but by many others, and he had no more reason for anticipating the special danger which overtook him than people at a circus have of being overrun by the horses in the exciting chariot races. I think the law is well established that no one is negligent as a matter of law because he has not anticipated negligence on the part of others and taken steps to avoid it, and, unless we are to ignore the evidence in this case and hold this boy to a degree of care not exacted of people in general, the verdict ought not to be set aside on the ground of contributory negligence.

I have examined the other questions in the case, and I am persuaded that there are no errors calling for a reversal of this judgment. Taking the plaintiff's version of the facts, and they are by far the best supported in the evidence, the plaintiff conducted himself with that degree of prudence which might fairly be expected, not only of a boy of his years, but of an ordinarily prudent man. He was where he had a perfect lawful right to be. He had a right to be where he was whether the races were going on or not. If he had come along there incidentally as an ordinary traveler, he would have been perfectly within his rights at the point where the accident occurred, as shown by the great weight of evidence, and the suggestion by the appellant that he was not invited there is little short of an impertinence. He had absolutely nothing to fear from the defendant's automobile so long as it was confined to the course which was set apart for its special use in racing, and, as against any one lawfully in Oyster Bay road, the defendant was bound to so operate its machine as not to invade that highway at racing speed, or in disregard of the rights of those who were there. It is not seriously questioned that the defendant negligently operated the car, and it was only because of this negligence that any one could have been injured in Oyster Bay road by this particular automobile on this particular occasion. To charge responsibility upon this boy, who was out of reach of the particular harm, except for the defendant's negligence, is to make a travesty of justice, and for my own part I cannot concur in such a result.

The judgment and order appealed from should be affirmed, with costs.

HIRSCHBERG, J., concurs.