[No. 13678. Department Two. May 5, 1917.]

NORTHERN COD FISH COMPANY, *Appellant*, v. C. O. STIBERG *et al.*, *Respondents*.[1]

CORPORATIONS—DIRECTORS—LIABILITY FOR ACTS OF OFFICERS. The directors of a corporation are not individually liable for the fraud of the president and general manager of which they had no knowledge, where the only allegation of negligence was that they failed to discharge him for other fraudulent acts under Rem. Code, § 3697, making the directors liable for unlawful dividends or withdrawals of the capital stock, and § 3677 providing that they shall be subject to the liabilities imposed by the act and "to none others," and no provision of the statute makes them liable for the acts of the president or general manager.

Appeal from a judgment of the superior court for King county, Ronald, J., entered September 27, 1915, upon sustaining a demurrer to the complaint, dismissing an action for fraud, tried to the court. Affirmed.

*Willett & Oleson*, for appellant.
*Winfield R. Smith*, for respondents.

MOUNT, J.—In this action the plaintiff sought to hold the directors and trustees of a corporation responsible for an al-

[1]Reported in 164 Pac. 750.

leged fraud perpetrated upon the plaintiff by the president and general manager of the corporation. A general demurrer to the complaint was sustained by the trial court. The plaintiff elected to stand upon the allegations of the complaint, and the action was dismissed. This appeal followed.

The only question in the case is the sufficiency of the complaint, which alleges, in substance, the following facts:

That the defendants are the directors and trustees of the Kildall Fishing & Packing Company, a corporation engaged in the fish brokerage business; that these directors and trustees had full charge of the business of the corporation, and elected Joseph Kildall as president and general manager thereof; that the trustees had a written agreement with the manager to the effect that he was to take orders from, and be subservient to, the trustees, and that they could, at any time without notice, remove Mr. Kildall from the management of the business; that, on October 9, 1914, Joseph Kildall represented to one D. Daun Egan, who was a broker for the plaintiff, that he, Mr. Kildall, individually, had an order for four carloads of codfish to be shipped to Davis Brothers, at Gloucester, Massachusetts, and requested said broker of the plaintiff to furnish the codfish to fill the order; that plaintiff accepted said order on condition that such business would not be transacted or shipped through the Kildall Fishing & Packing Company and that company should have no connection with the transaction; that these representations of Mr. Kildall were false, and the fact was that the Kildall Fishing & Packing Company had received the order, and that Davis Brothers were customers of the Kildall Fishing & Packing Company, and not of Joseph Kildall; that, immediately upon making the agreement above stated, and in violation of it, and without the knowledge of the plaintiff, Mr. Kildall placed the shipments in the hands of the Kildall Fishing & Packing Company; that the order was for shipments of fish in four separate carload lots, with approximately thirty days between each shipment; that the plaintiff shipped, at in-

tervals of approximately thirty days, three carloads of cod-
fish to Seattle, Washington, consigned to itself; that without
the knowledge of the plaintiff, the Kildall Fishing & Packing
Company took possession of each of the cars upon arrival at
Seattle and shipped the same to Davis Brothers at Gloucester,
Massachusetts, and took out a separate bill of lading for each
carload in the name of the Kildall Fishing & Packing Com-
pany; that said company took the bill of lading for each
shipment and attached thereto a sight draft for the total
amount of each shipment, being a sight draft for each car-
load as shipped, and totaling $5,156.75; that the Kildall
Fishing & Packing Company sold the bills of lading with
sight drafts attached for the total amount represented by
the drafts, namely $5,156.75, without the knowledge or con-
sent of the plaintiff; that thereupon Joseph Kildall, as pres-
ident and manager of the Kildall Fishing & Packing Com-
pany, represented to the plaintiff that the Kildall Fishing &
Packing Company could obtain in cash, in Seattle, for said
codfish but eighty per cent (80%) of the invoice price thereof,
and that the balance would be paid by Davis Brothers on ar-
rival of the fish at Gloucester; that thereupon, at the differ-
ent dates of shipment, the Kildall Fishing & Packing Com-
pany, by its president and general manager, issued its checks
to the plaintiff in the aggregate sum of $3,971.71, and that
said checks were received and cashed by the plaintiff; that
the Kildall Fishing & Packing Company had received the to-
tal invoice price of said shipments and had paid over to the
plaintiff only eighty per cent (80%) of that amount and un-
lawfully retained the balance of twenty per cent (20%); that
the plaintiff believed that eighty per cent (80%), and no
more, of the invoice price had been advanced by Davis Broth-
ers, and that the checks so given were for the total amount
collected by the Kildall Fishing & Packing Company; that
thereafter the Kildall Fishing & Packing Company fraudu-
lently converted the balance, or twenty per cent (20%) of the
invoice price, belonging to the plaintiff, all of which was done

by the said Joseph Kildall, as president and general manager of the Kildall Fishing & Packing Company; that said company thereafter became insolvent and was placed in the hands of a receiver, and the twenty per cent (20%) so obtained by the company was deposited to the credit of the Kildall Fishing & Packing Company and was lost to the plaintiff. The complaint then alleges as follows:

"That prior to October 9, 1914, and at the time the said Kildall Fishing & Packing Co. acted as agent for the plaintiff herein, the said defendants C. O. Stiberg, C. F. Hendricksen and Anthon Eckern had personal knowledge of the fact that the said Joseph Kildall was unreliable and dishonest and had knowledge of other fraudulent transactions and embezzlements of the said Joseph Kildall while he acted as president and manager of the said Kildall Fishing & Packing Co., and that in spite of such knowledge, they, the said defendants, carelessly and negligently allowed the said Joseph Kildall, as manager of the Kildall Fishing & Packing Co., to remain such manager and president of said company, and allowed him to make contracts and carry on the business of the said Kildall Fishing & Packing Co. and to receive and negotiate bills of lading and commercial paper, and to receive and pay out cash without any limitation or supervision whatsoever.

"That through the said misrepresentations of the said Joseph Kildall, as manager of the said Kildall Fishing & Packing Co., and through the negligence of these defendants, the plaintiff has been damaged in the sum of $1,194.99; that the said defendants, C. O. Stiberg, C. F. Hendricksen and Anthon Eckern, as trustees and directors of the said Kildall Fishing & Packing Co., were negligent in this, that they allowed the said Joseph Kildall, after they had knowledge of former fraudulent transactions, to remain as president and manager of said corporation, and allowed him to convert the property and money belonging to the plaintiff."

The plaintiff then demands judgment against the defendants for $1,194.99.

It is not alleged in the complaint that the respondents, who were the trustees of the Kildall Fishing & Packing Company,

had any notice or knowledge of this particular transaction. It is alleged that they had knowledge of other fraudulent transactions of Mr. Kildall and that they were, therefore, negligent in not discharging him from the management of the affairs of that corporation. It is not alleged in the complaint, nor is it claimed, that these respondents took any part in the transaction whatever. It is not alleged in the complaint that the respondents could have known anything about the transaction. The complaint simply alleges that Mr. Kildall, who was acting as general manager of the corporation of which these respondents were directors, represented that he had an order, personally, from Davis Brothers for four carloads of codfish. He desired the appellant to furnish the fish to him, individually. The appellant agreed to do so upon condition that Mr. Kildall would not ship the fish through the corporation of which he was manager. In other words, the complaint charges that the transaction was a personal transaction between Mr. Kildall and the appellant. After the fish were shipped by the appellant, the corporation, of which Mr. Kildall was manager, took charge of the cars of fish and shipped them to Gloucester, Massachusetts. The bills of lading with sight drafts attached were cashed for the full amount. Eighty per cent (80%) of what was received was paid by checks of the Kildall Fishing & Packing Company to the appellant, and the checks were cashed by the appellant. At that time, of course, the appellant knew that the business was being done by the Kildall Fishing & Packing Company, and not by Mr. Kildall personally. Mr. Kildall represented that the amount of the checks was the total amount collected. This was not the full amount collected, but the remaining twenty per cent (20%) was kept on hand by the Kildall Fishing & Packing Company. Afterwards, when that company went into the hands of a receiver, this money was used by the Kildall Fishing & Packing Company to pay its debts.

So far as the allegations of the complaint are concerned, the directors and trustees of the corporation were not informed that anything wrong had been done by Mr. Kildall, and there is nothing in the complaint to charge them with notice thereof, except the mere fact that the fish were received and sold and the money collected by the Kildall Fishing & Packing Company. The statute (Rem. Code, § 3677) provides that corporations for mercantile purposes "may be formed according to the provisions of this chapter; such corporations and the members thereof being subject to all the conditions and liabilities herein imposed, and to none others."

Section 3697 provides that, where trustees make any dividends from the business of a corporation, or divide, or withdraw any part of the capital stock of the company, unless in the manner prescribed in this chapter, then the trustees under whose administration such act occurred, except those who dissent therefrom, shall, in their individual capacities, be liable to the corporation and the creditors thereof in the event of its dissolution. Section 3698 provides for the liability of stockholders.

There is no provision of the statute making the trustees liable for the acts of the president or manager of the corporation. The corporation itself is, no doubt, liable for his corporate acts, but trustees are not made so by statute, and, under the provision above quoted, cannot be held liable except for acts done by the trustees, or in which they participated. See *American Radiator Co. v. Kinnear*, 56 Wash. 210, 105 Pac. 630, 35 L. R. A. (N. S.) 453. In the case of *Barnard Mfg. Co. v. Ralston Milling Co.*, 71 Wash. 659, 129 Pac. 389, we held that a stockholder in a corporation was liable for his own misrepresentations. In referring to the sections above named, we said:

"These sections deal only with their contractual relations. The legislature did not intend to, and has not, exempted a stockholder in a corporation from liability, when by his actual misrepresentations as to the capital stock of the corporation

he has induced a third party to extend it a credit which it would not otherwise have given it, and has suffered a loss in so doing. In short, there was no intention to protect a stockholder against his own fraudulent acts."

It is not alleged in the complaint in this case that these trustees participated in the fraud of Mr. Kildall in any way. It is not even alleged that they knew of the fraud, and it is not shown that they could have discovered the fraud by diligence. As stated above, this appellant did not desire to do business with the corporation of which Mr. Kildall was manager. It intended to do business with him personally. If the allegations of the complaint are true, Mr. Kildall is liable, personally, to the appellant. The corporation, of which he was manager, having received the money, is also liable to the appellant, but we see no reason why the trustees, who took no part in the transaction and who knew nothing of it, may be held personally liable. The only allegation in the complaint with reference to negligence of the trustees is to the effect that the trustees knew of other transactions of Mr. Kildall, which transactions were fraudulent, and, for that reason, they should have discharged him. But a general allegation of this character is not sufficient to hold the trustees individually responsible, where they did not participate in, and had no knowledge of, the transaction.

We are of the opinion, for these reasons, that the trial court properly sustained a demurrer to the complaint.

The judgment is therefore affirmed.

ELLIS, C. J., PARKER, FULLERTON, and HOLCOMB, JJ., concur.