## EDMUND P. ALLEN v. C. D. VELIE AND OTHERS.[1]

June 15, 1917.

Nos. 20,158—(46).

**Joint enterprise — contracts construed.**

> A contract, set forth fully in the opinion, is *held* to create a joint enterprise, and a subsequent agreement between the parties stipulating for the termination of the rights of the parties under certain conditions, is *held* lawful and effective for that purpose.

Action in the district court for Hennepin county by the receiver of O. W. Kerr Company to have a certain agreement dated October 12, 1914, declared a mortgage to secure the payment of any sums which

[1]Reported in 163 N. W. 280.

may be due to defendants Velie and Warner, to cancel it, and to restrain defendants from interfering with defendant Koon in the possession of said agreement, and the defendant Koon restrained from delivering the same to defendants Velie and Warner. Defendants' motion for judgment on the pleadings was granted by Hale, J. From the judgment entered pursuant to the order for judgment, plaintiff appealed. Affirmed.

*Morphy, Bradford & Cummins,* for appellant.
*Koon, Whelan & Hempstead,* for respondents.


HALLAM, J.

In June, 1913, M. E. Hickey purchased from the state of New Mexico a tract of land, paying one-tenth per cent down and agreeing to pay the balance in 30 annual payments with 4 per cent interest.

Hickey assigned an undivided half interest in said contract to O. W. Kerr. Kerr paid to Hickey one-half of the initial payment and assumed and agreed to pay one-half of the deferred payments.

Warner and Velie furnished Kerr the money to make this payment and furnished $5,000 to be used in developing the lands. August 22, 1913, a contract was entered into, known as Exhibit B, between Kerr as party of the first part, Warner and Velie as parties of the second part, and the Kerr Company as party of the third part. By its terms the company was made the exclusive sales agent for the sale of the lands. It was to receive as its commission all over and above a certain net price. Upon a sale being made, Warner and Velie were to make or authorize a sales contract for any land sold. The company was to make all collections on sales and turn the money over to them. Out of the money so received there should first be paid, interest, taxes and instalments, due upon the lands, the balance to be divided as follows: Warner and Velie to receive each one-fourth the profit, the company the balance. Until the money furnished by Warner and Velie was repaid, all profits should be applied on said amount. Warner and Velie were given the option to terminate the sales contract and call for a division of the land. On the same date Kerr gave to Warner and Velie promissory notes for the amount furnished, indorsed by the Kerr Company, one payable July 1, 1914, and one July 1, 1915, with 6 per cent interest. The contract

stipulated that if the amounts derived from sales were not sufficient to pay the notes at maturity, Kerr or the Kerr Company would pay the same. In the event of their doing so, the net profits were to be applied to their reimbursement before any division was to be made. In said contract it was stated: "It is the intent and purpose of this agreement that the parties of the second part are simply furnishing the money to purchase a half interest in said lands, and to pay the costs of certain development work, and that each of said parties is to have one-fourth ($\frac{1}{4}$) of the net profit;" that neither Warner nor Velie should assume any liability or obligation except to furnish said money as above provided, and that Kerr and the Kerr Company should assume every obligation with respect to the purchase and sale of said lands.

October 12, 1914, arrived and no land had been sold. On that date the parties made an agreement, known as Exhibit C. This agreement recited the agreement of August 22, 1913, and the advances of money above mentioned, the making and indorsement of the notes. It recited that it was necessary to make further payments of principal and interest to the state of New Mexico amounting in all to $4,661.09, that the Kerrs were not able to make such payments and had defaulted in the payments which they had theretofore agreed to make. It was agreed that Warner and Velie should make said payments to the state of New Mexico, and they did do so. It was agreed that Kerr should give them further notes therefor indorsed by the Kerr Company due in six months and bearing 6 per cent interest. It was further agreed that Warner and Velie would extend the time on the note due July 1, 1914, for 12 months from date of said contract, and extend the time for payment of the note due July 1, 1915, for 3 months after its due date. The exclusive sales agency was continued and the plan of disposal of the land as fixed by the first agreement was continued. The agreement for division and disposition of the net profits remained as before, except that only the company's share of the profits was to be applied in payment of the notes. The option of Warner and Velie to terminate the sales agency and call for division of the land was continued.

It was stated in this second contract that it was the intent and purpose to give to Kerr and the Kerr Company "an extension of time, amounting to the usual period of redemption within which to make

137 M—13

good their defaults, in respect to the purchase and sale of said lands, and the payment of said notes, and the division of the profits," and that Kerr and the Kerr Company "shall not have or claim any further period of redemption or extension of time, within which to make good defaults over and above the time herein limited and specifically stated."

At the same time this contract was made the following documents were executed, bearing even date therewith:

Kerr executed Exhibit D, an absolute assignment to Warner and Velie of his interest in the Hickey contract and a quitclaim of his interest in said lands.

Kerr and the Kerr Company executed Exhibit E, an assignment and transfer to Warner and Velie of all their "right, title, interest, claim and equity of redemption or otherwise * * * in and to the lands" aforesaid.

An agreement, Exhibit F, was made between Kerr and the Kerr Company and defendant Koon, stipulating that Exhibit E "is herewith deposited with said W. A. Koon * * * in escrow," and that, if said notes and interest were not paid in full when due, Koon was authorized and directed to deliver said conveyance or assignment to Warner and Velie, the same to become effective and in full force and effect upon such delivery and upon return of said notes canceled, and said Koon was authorized to accept and receive said canceled notes from Warner and Velie.

Said notes became due, Kerr and the Kerr Company defaulted in their payment. The Kerr Company became insolvent and plaintiff Allen was appointed its receiver. This action was brought, the complaint alleging that Koon threatened to deliver to Warner and Velie said escrow agreement, and asking that he be enjoined from so doing; that said Exhibits C, D, E, and F be declared together to constitute a mortgage to secure the payment of these notes; that Exhibit E be delivered up and canceled, and the interest of the Kerr Company in said lands be declared an asset of said estate. A temporary restraining order was issued, but later defendant's motion for judgment on the pleadings was granted. Plaintiff appealed.

The claims of the parties as to the nature of the first agreement are not altogether consistent. In paragraph 3 of the complaint it is alleged that by Exhibit B Kerr assigned the interest of himself and of

the Kerr Company *"as security* for the payment of the said promissory notes and interest thereon." This, the defendant in its answer denied. In this court, plaintiff contends that the first agreement was not given as security. Defendant contends that it was.

In view of these contradictory contentions of the parties, we are at liberty to adopt our own construction of these contracts.

Taking Exhibit B alone, it is hard to distinguish it from the contract considered in Irvine v. Campbell, 121 Minn. 192, 141 N. W. 108, Ann. Cas. 1914C, 689, which was held a joint adventure involving rights and obligations akin to those of a partnership. Exhibit B gives a vested half interest in the profits to Warner and Velie, retaining the other half interest in the Kerrs. The Kerrs could not, by paying their notes, relieve themselves of the interest of the defendants in the property.

There is some language in the second agreement, Exhibit C, indicative of a construction of Exhibit B, either alone or in connection with documents not pleaded, as a mortgage, and the second series of contracts as an extension of it. A majority of the court are of the opinion, however, that, taking all the instruments together, it cannot be said that Exhibit B was a mortgage nor that the later contracts can be so classed, but that Exhibit B created a joint enterprise or adventure, and that the second series of contracts constituted a valid final settlement and adjustment of the rights of the parties to Exhibit B.

Judgment affirmed.