# CARRIE ELLINGSON v. WORLD AMUSEMENT SERVICE ASSOCIATION, INC. AND ANOTHER.
## HENRY C. LARSON v. SAME DEFENDANTS.
## ALFRED H. BAKKE v. SAME DEFENDANTS.
## J. J. HEFFERN v. SAME DEFENDANTS.[1]

November 30, 1928.

Nos. 26,832, 26,833, 26,834, 26,835.

**Defendant amusement corporation was liable for accident at automobile race.**

1. During an automobile race at a fair, a car left the track and plunged into a crowd of spectators killing one and injuring others. The race was run under a contract by which the fair association furnished the track and grounds and defendant corporation the cars and drivers, and each received half the gate receipts. *Held* that they were joint adventurers and that defendant corporation is liable for the negligence which resulted in the accident.

**Question for jury whether spectators were guilty of contributory negligence.**

2. The management intended that patrons should witness the races from positions near the track, for they admitted a much larger number than could be placed in the grand stand and bleachers; and whether those injured were guilty of contributory negligence in taking the positions where they were when injured was a question for the jury.

**No prejudicial rulings at the trial.**

3. There were no reversible errors in the rulings at the trial.

**When officer of corporation is liable for its tort.**

4. An officer of a corporation who takes part in the commission of a tort by the corporation is liable therefor; but he is not liable for torts committed by the corporation or by other officers or agents of the corporation in which he had no part.

**Individual defendant was not liable for negligence.**

5. Defendant Sloan was an officer of defendant corporation but had no part in managing or conducting the races and is not liable for the negligence which caused the accident.

See note in 48 A. L. R. 1055; 39 L.R.A.(N.S.) 901; 7 R. C. L. 504; 2 R. C. L. Supp. 400; 5 R. C. L. Supp. 407.

[1]Reported in 222 N. W. 335.

Four actions in the district court for Clay county, tried together, consolidated on appeal and submitted on the record and briefs in the Ellingson case, No. 26,833, to recover damages for the death of A. S. Ellingson, husband of Carrie Ellingson, and for injuries sustained by plaintiffs Larson, Bakke and Heffern by reason of the negligence of defendants. There was a verdict in each case for the plaintiff (Ellingson, $14,000; Larson and Bakke, $8,000 each; Heffern, $1,000). From an order, Nye, J. denying their alternative motion for judgment or a new trial in each case, defendants appealed. Affirmed as to defendant amusement association; reversed as to defendant Sloan and judgment in his favor notwithstanding verdicts ordered.

*Christian G. Dosland* and *Lawrence, Murphy & Nilles,* for appellants.

*Garfield H. Rustad, Charles A. Lyche* and *B. F. Spalding,* for respondents.

TAYLOR, C.

During an automobile race at the fair held by the North Dakota State Fair Association at Grand Forks in that state in July, 1925, one of the automobiles left the track and plunged into a crowd of spectators killing A. S. Ellingson and injuring several others. Carrie Ellingson, as widow of A. S. Ellingson, brought an action against the World Amusement Service Association, Inc. and J. Alex Sloan alleging that the accident resulted from their negligence. Under the North Dakota statute the surviving widow may bring such an action. She charged negligence in failing to provide a fence to keep spectators outside the usual so-called "neutral zone" along the last turn and home stretch of the track, in running the race upon a track known to be improperly constructed and in an unsafe condition, and in operating the cars in a manner that was dangerous and improper upon such a track. Several of the injured also brought actions against the same defendants alleging the same negligence. The actions brought by Carrie Ellingson, Henry C. Larson, Alfred H. Bakke and J. J. Heffern were tried together by stipulation and

resulted in verdicts for each of the plaintiffs. Both defendants made a motion in each action for judgment non obstante or for a new trial, and appealed from the orders denying their several motions. The appeals were all submitted upon the same record and the same brief.

Defendants group their numerous assignments of error under four general propositions: (1) That the evidence will not sustain a finding that defendant amusement association was responsible for the negligence which caused the accident; (2) that the evidence establishes contributory negligence on the part of the several plaintiffs as a matter of law; (3) that the court erred in its rulings admitting and excluding evidence; and (4) that the evidence will not sustain a finding that defendant Sloan was responsible for the negligence which caused the accident.

1. Defendants concede that the evidence will sustain a finding of negligence on the part of the fair association. The court submitted the case to the jury on the theory that the defendants and the fair association were engaged in a joint enterprise and that the defendants were liable for the negligence of all who were engaged in carrying out such joint undertaking. We will consider first whether the court was correct in holding that the fair association and defendant amusement association were joint adventurers in putting on these races. The claim of liability on the part of defendant Sloan will be considered later.

The races were put on pursuant to a written contract between the fair association and defendant amusement association made in May, 1925, and were to be conducted under the rules of the International Motor Contest Association, of which the fair association was a member. These rules cover, in much detail, the matter of arranging for and conducting such races and among other things provide that no member of the international association shall put on an automobile race without first procuring the sanction of that association and paying a specified fee therefor; that only racing cars licensed by the association and drivers licensed by it shall take part in such races; that an official representative of the association

shall be present at all races; that the races shall be in charge of a referee with power to enforce all rules of the association; and that the official representative of the association or some person approved by him shall act as such referee. Defendants stress these and other rules as showing that they were not in control of the race and were not liable for the negligence causing the accident.

Under the contract between the fair association and defendant amusement association, the fair association agreed to promote and conduct automobile races and advertise them as a special feature of the fair; to furnish the track and grounds and necessary police protection; to pay any taxes collectible by the government; to procure the sanction of the international association at its own expense; and to assume responsibility for complying with the rules and regulations of that association. The amusement association agreed to have six racing cars and professional drivers present for the races and to furnish a program of six events. "In consideration of the appearance" of the amusement association "to take part in said automobile races" the fair association agreed to pay over to it a sum equal to 50 per cent of the "gross gate, grand stand, parking space and infield receipts" of that day. The same remuneration was to be paid although weather conditions prevented holding any or all of the races. "The same division of receipts" was to be made if the date should be postponed by mutual consent. If it became necessary for the fair association to return gate receipts to the public, the amusement association was to return its share of such refunds. No other automobile race was to be allowed on the track at any time before these races or for ten days thereafter without the consent of the amusement association. That association was to procure and put out advertising matter the cost of which up to the sum of $125 was to be paid by the fair association and above that sum by the parties equally. It was also to provide for printing and selling score cards and to divide the profit therefrom. It was not to hold the fair association liable in damages for any accident to a car or driver. Neither party was to be liable to the other for failing to perform the contract or any part of it if such performance was rendered impossible by something beyond human control.

To summarize briefly, the parties agreed to promote and conduct automobile races under the rules of the International Motor Contest Association at the fair to be held by the fair association—one to furnish the grounds and track and procure the sanction of the international association, the other to furnish the racing cars and drivers; each to take part in advertising the races, to bear specified portions of the incidental expense, and to share equally in the gate and other receipts of that day.

We are of opinion that the trial court was correct in holding that the contract created the relationship of joint adventurers between the parties thereto in the matter of promoting and conducting these races. The nature of the project, and the part which each was to perform in carrying it out, and the fact that each was to receive a share of the gate and other receipts and no other compensation bring it within the class of joint adventures under the decisions of this and other courts. Hammel v. Feigh, 143 Minn. 115, 173 N. W. 570; Irvine v. Campbell, 121 Minn. 192, 141 N. W. 108, Ann. Cas. 1914C, 689; Sonnesyn v. Hawbaker, 127 Minn. 15, 148 N. W. 476; Kent v. Costin, 130 Minn. 450, 153 N. W. 874; Allen y. Velie, 137 Minn. 191, 163 N. W. 280; Swanson v. Lindstrom, 151 Minn. 19, 185 N. W. 950; Johnson v. Farmers & M. State Bank, 152 Minn. 442, 189 N. W. 583; also numerous cases cited in annotation in 48 A. L. R. 1055, et seq.

Where parties engage in a joint adventure each is liable for the negligence of the others and of the persons and agencies employed to accomplish the common purpose while engaged in the furtherance of that purpose. Kokesh v. Price, 136 Minn. 304, ¶ 7, 161 N. W. 715, 23 A. L. R. 643; Stroher v. Elting, 97 N. Y. 102, 49 Am. R. 515; Keiswetter v. Rubenstein, 235 Mich. 36, 209 N. W. 154, 48 A. L. R. 1049; Bonfils v. Hayes, 70 Colo. 336, 201 P. 677; Hackney v. Dudley, 216 Ala. 400, 113 So. 401. It follows that the amusement association is liable for the negligence of the fair association and of those employed under the authority of either to carry out and conduct the joint undertaking.

2. Defendants contend that the plaintiffs were guilty of contributory negligence as a matter of law in taking the positions which they occupied at the time the accident happened.

The track was a half mile dirt track originally used for horse races and never specially prepared for auto races. The accident occurred at the curve where the cars entered the home stretch. There was a wet, slippery place at this curve caused by leakage from a sprinkling cart which had been left at that place for several hours before the races began. Cars had skidded and thrown mud at this place in previous laps but had been kept under control and on the track by their drivers. There was a fence along the inside of the track and also along the outside of the track. A rope supported by stakes had been stretched 40 or 50 feet back from the outside fence to create a so-called "neutral zone" and keep spectators that distance from the track; but this rope was down and lying on the ground and the spectators were along or near the fence when the plaintiffs arrived. They did not arrive until after the races had started. Shortly before the accident the police officers directed the crowd to move back and it apparently did so. Plaintiff Larson says he moved back when directed and did not again go forward. He was about 25 feet from the fence at the time of the accident. Ellingson and plaintiffs Heffern and Bakke were 40 or 50 feet from the fence talking together about other matters and giving little attention to the race. The grand stand was full but there were vacant seats in the bleachers, and defendants urge that the plaintiffs were guilty of contributory negligence in taking positions near the track instead of taking these seats. In order to occupy these seats they were required to pay another fee in addition to the admission fee. Furthermore the grand stand and bleachers combined would seat less than one-half of the patrons who had paid for admission and were on the grounds. Having admitted a much larger number than they had provided seats for, the management must be held to have intended that their patrons should witness the races from other available positions as well as from the grand stand and bleachers. Whatever may be the rule where seats are provided for all who are ad-

mitted, we cannot say that under the circumstances here disclosed the plaintiffs were guilty of contributory negligence as a matter of law in taking positions outside the bleachers. Neither can we say that they were guilty of contributory negligence as a matter of law in taking the positions which they occupied at the time of the accident. Both questions were for the jury.

Defendants cite Wells v. Minneapolis B. & A. Assn. 122 Minn. 327, 142 N. W. 706, 46 L.R.A.(N.S.) 606, Ann. Cas. 1914D, 922, a case where a spectator at a baseball game had been struck and injured by a foul ball; but the facts in that case were not similar to the facts in the instant case and it does not bear out defendants' contention. Seats had been provided for all patrons and without any extra charge. The plaintiff had a choice between a seat in the part of the grand stand protected by a wire screen and a seat outside that part, for there were plenty of vacant seats in both places. The court said [at p. 331] that where the management had provided such a choice it could not be held negligent as to those who had "full knowledge of the danger from thrown or batted balls," and that "if it had appeared clearly that plaintiff knew the dangers incurred by taking a seat in the open" she should be held to have assumed the risk; but further said that it did not conclusively appear that she had such knowledge and that what precautions should be taken to warn and protect spectators from dangers of which they might be ignorant was a question for the jury.

Defendants rely to a considerable extent upon Baldwin v. Locomobile Co. 143 App. Div. 599, 128 N. Y. S. 429, which involved an accident at an automobile race. The race was on public highways which had been set apart for the purpose of that race by the public authorities. It was not a case where the management provided the grounds and charged an admission fee. The cars ran north on what was known as the Jericho turnpike and then turned west at a right angle into what was known as the Roslyn road. A number of people, including the plaintiff, gathered at the northeast corner of this intersection to watch the cars as they approached and as they made this dangerously sharp turn. Plaintiff saw that every car as

it made this turn skidded more or less and went beyond the north edge of the Roslyn road into the continuation of the turnpike. He said he had observed this perhaps a hundred times during the race. He left his position on the east side of the turnpike and went to a tire shop some distance to the west. Shortly thereafter he came back. As he reached the continuation of the turnpike he saw a racing car coming at high speed on the turnpike and then 400 or 500 feet distant. Others who were in the continuation of the turnpike got out of the way. He proceeded to cross it a few feet north of the north edge of the Roslyn road without paying any further attention to the car. When about half way across he was struck by the car as it made the turn. In holding him guilty of contributory negligence the court said [153 App. Div. 602]:

"According to his own testimony he deliberately went into a place of known danger, in the imminent presence thereof, and without exercising the slightest precaution."

Defendants cite numerous other cases but none involving facts similar to those of the instant case.

Arnold v. State, 163 App. Div. 253, 148 N. Y. S. 479, cited by plaintiffs, is the most nearly analogous to the instant case of any to which our attention has been called. The state possessed fair grounds and conducted a state fair thereon through a commission and by statute made itself liable for damages. During an automobile race a tire burst on one of the racing cars and the car plunged into the crowd killing several and injuring others. Findings were made by a referee and were approved and adopted unanimously by the court. The paragraph in respect to contributory negligence is as follows [163 App. Div. 264]:

"There was no contributory negligence on the part of the decedents or the living claimants. They attended an exhibition given by the state, on its own ground, upon its invitation and after paying the admission fee charged. The grand stand was full. They stood by the fence, and where else could they stand and see the race which they had paid to see? What everybody did in the presence of the

managers, anybody could do.  Boyce v. Manhattan Ry. Co. 118 N. Y. 314, 319, 23 N. E. 304.  A multitude of people stood by the fence at various points, and the fence looked like an adequate guard, although it was not in fact.  There was no other place to stand if they saw the race at all.  They were allowed and expected to stand where they did.  No warning of danger was given and they had reason to believe the place was safe.  It does not expressly appear that they knew the danger of auto racing in general, or the particular danger in this race, and I cannot find from the circumstances that such unskilled observers knew or should have known it.  They had not had the experience and the opportunity to know that the commissioners had.  They stood where they had a right to stand in the place provided for them, and in doing so they were not guilty of contributory negligence."

3..  The rulings urged as error present no questions of importance. At the trial defendants objected to evidence of the doings of the fair association and of those acting under the authority of that association on the ground that the amusement association was not responsible therefor.  The amusement association, being a joint adventurer in carrying on the races, was responsible for the doings of those engaged in conducting them while acting in furtherance of the common purpose, and the evidence objected to was properly admitted.  The objections to the charge fall for the same reason.

4.  Defendant Sloan was one of the vice-presidents of the amusement association, and the matter of arranging for automobile races was in his department.  He however did not make the contract in question.  It was made by other officials of the corporation.  He had been on business in western Canada and on his way back stopped off at Grand Forks, reaching there while the automobile races were in progress.  He arrived at the fair grounds a few minutes before the accident.  He personally had no part whatever in the management or conduct of the races.  If liable at all it is because he had charge of the department which arranged for such races and reached the grounds while this race was in progress but before the accident.

It is the universal rule that an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor; but while there are some decisions leaning the other way, notably Cameron v. Kenyon-Connell Commercial Co. 22 Mont. 312, 56 P. 358, 44 L. R. A. 508, 74 A. S. R. 602, it is settled by the great weight of authority that an officer of a corporation who took no part in the commission of a tort committed by the corporation is not personally liable to third parties for such tort, nor for the acts of other officers, agents or employes of the corporation in committing it.    Folwell v. Miller (C. C. A.) 145 F. 495, 10 L.R.A.(N.S.) 332, 7 Ann. Cas. 455; Bianki v. Greater American Exp. Co. 3 Neb. (unof.) 656, 92 N. W. 615; Wilson v. Thayer Co. Ag. Soc. 115 Neb. 579, 213 N. W. 966, 52 A. L. R. 1393; Tibbetts v. Wentworth, 248 Mass. 468, 143 N. E. 349; Bath v. Caton, 37 Mich. 199; Brown v. Lent, 20 Vt. 529; Pelton v. Gold Hill Canal Co. 72 Or. 353, 142 P. 769; McFarland v. Carlsbad Sanatorium Co. 68 Or. 530, 137 P. 209, Ann. Cas. 1915C, 555; Northern Cod Fish Co. v. Stiberg, 96 Wash. 126, 164 P. 750; Alder v. Crosier, 50 Utah, 437, 168 P. 83; O'Neil v. Young, 58 Mo. App. 628; Arthur v. Griswold, 55 N. Y. 400; Rives v. Bartlett, 215 N. Y. 33, 109 N. E. 83; Gloster Lbr. Co. v. Wilkinson, 118 Miss. 289, 79 So. 96; Dean v. Brock, 11 Ind. App. 507, 38 N. E. 829; Gila Water Co. v. Gila L. & C. Co. 30 Ariz. 569, 249 P. 751; Rudisill S. P. Co. v. Eastham S. P. & F. Co. 210 Ala. 145, 97 So. 219; Conaty v. Torghen, 46 R. I. 447, 128 A. 338; Bacheller v. Pinkham, 68 Me. 253.

The negligence in the preparation and management of the track and grounds was the negligence of the fair association.   It is imputable to the amusement association as a joint adventurer in conducting the races; but it cannot be imputed to Sloan individually, who was merely an officer of the corporation and not personally a party to the joint adventure.   Plaintiffs also charged negligence on the part of the driver of the automobile.   He was a professional driver of racing cars duly licensed as such by the International Motor Contest Association, and there was no attempt to show that he was not a fit, skilful and competent driver in such races.   He

was furnished by the amusement association, and that association is liable for any negligence on his part which was a concurring cause of the accident. But he was not an employe of. Sloan individually, and his negligence, if any, cannot be imputed to Sloan under the doctrine of respondeat superior nor because Sloan was an officer of the corporation. Sloan had no part in managing or conducting the races and cannot be held personally liable for the fault of those who prepared and controlled the grounds and track and managed the races, nor of those who drove cars in the races.

We reach the conclusion that the order denying the motion of the World Amusement Service Association, Inc. for judgment notwithstanding the verdict or for a new trial should be affirmed in each of the four cases; and that the order denying a similar motion of J. Alex Sloan should be reversed in each of the four cases, and that judgment notwithstanding the verdict should be rendered in. his favor in each thereof. It is so ordered.