# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1069
_____

Martinizing International, LLC

*Plaintiff - Appellant*

v.

BC Cleaners, LLC, et al.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: December 12, 2016
Filed: April 28, 2017

_____

Before LOKEN, MURPHY, and KELLY, Circuit Judges.

_____

LOKEN, Circuit Judge.

Martinizing International, LLC commenced this action against BC Cleaners, LLC and two of its member-managers, Brent Lundell and Timothy Carver, asserting claims of Lanham Act trademark infringement, see 15 U.S.C. § 1125(a), and violation of the Minnesota Deceptive Trade Practices Act (MDTPA), see Minn. Stat. § 325D.44. Defendants failed to appear. The district court granted a default judgment against BC Cleaners, concluding that it willfully infringed Martinizing's

trademarks and engaged in a deceptive trade practice. <u>Martinizing Int'l, LLC v. BC Cleaners, LLC</u>, 2015 WL 8483280 (D. Minn. Dec. 9, 2015). The court denied Martinizing a default judgment against Lundell and Carver, concluding they were not personally liable for trademark infringement or a deceptive trade practice. <u>Id.</u> at *3. Martinizing appeals, arguing the court erred when it denied a default judgment against Lundell and Carver and reduced the award of attorneys' fees for willful infringement. Defendants have not appeared in this Court. We affirm the grant of a permanent injunction enjoining BC Cleaners from using Martinizing's trademarks. We conclude Martinizing failed to prove willful infringement by BC Cleaners and therefore reverse the award of damages, an accounting for profits, and attorneys' fees. We affirm the denial of a default judgment against defendants Lundell and Carver.

## I.

Martinizing's amended complaint alleged that, in June 2011, it entered into two franchise agreements with Markus Kanning, dba KM Cleaners, Inc., authorizing use of Martinizing's trademarks in operating dry-cleaning stores in Eagan and Inver Grove Heights, Minnesota. The agreements prohibited Kanning as franchisee from selling the franchise locations or assigning the franchise agreements without Martinizing's prior written consent. Martinizing learned that KM Cleaners and BC Cleaners entered into an Asset Purchase Agreement dated August 22, 2014, without Martinizing's consent, and that defendants continued to operate the franchised stores, using and displaying Martinizing's trademarks without its approval. On January 15, 2015, counsel for Martinizing sent a letter to BC Cleaners and Lundell, demanding that they sign a franchise agreement or refrain from using the trademarks, but defendants continued to use Martinizing's marks and trade dress. Martinizing attached to the complaint copies of a document entitled "Asset Purchase Agreement of Martinizing Dry Cleaners" between KM Cleaners, Inc. and BC Cleaners, LLC, and the January 2015 "Cease and Desist" letter. The complaint generally alleged that

Lundell and Carver were member-managers who "aided, abetted, directed and controlled BC with respect to the wrongful conduct."[1]

When a default judgment is entered, facts alleged in the complaint are taken as true, but "it remains for the [district] court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." Marshall v. Baggett, 616 F.3d 849, 852 (8th Cir. 2010) (quotation omitted). Thus, after entry of default, Martinizing had to prove it was entitled to the relief sought in its complaint against each defendant -- treble damages under the Lanham Act, an injunction enjoining use of its trademarks and unfair competition, prejudgment interest, costs, and attorneys' fees. Whether Martinizing met that burden is an issue of law we review *de novo*. Marshall, 616 F.3d at 853.

In support of its motion for entry of default, Martinizing submitted two email responses from defendants, neither of which was filed with the court. In a March 1, 2015 email, Lundell stated: "We will comply with [Martinizing's demands]. Signage will [be] handled by KM Cleaners and the landlord who are operating the stores. The stores are no longer under our control." In a June 23, 2015 email, Lundell wrote:

> As an additional follow-up, BC Cleaners, LLC was never a franchisee of Martinizing . . . . BC Cleaners was operating the units for KM Cleaners, LLC along with an agreement to purchase the units from KM Cleaners [that] was never fully executed.

In support of its motion for default judgment, Martinizing submitted with an attorney affidavit copies of its franchise agreements with Kanning, the purported Asset Purchase Agreement and "Closing Documents" between KM Cleaners and BC

---

[1]The Asset Purchase Agreement documents reveal that Lundell signed the Agreement on behalf of BC Cleaners, and that Lundell and Carver personally guaranteed BC Cleaners' financial obligations under that Agreement.

Cleaners, the January 2015 Cease and Desist letter, photos of the dry-cleaning stores showing use of the Martinizing trademarks, and documents supporting its claim for an award of $18,592.92 in costs and attorneys' fees. The attorney claimed personal knowledge of facts supporting the claim for costs and attorneys' fees, but no first-hand knowledge of facts relating to the underlying franchise transactions.

## II.

In our review of this abbreviated record, we found the most notable aspect to be that the allegations of trademark infringement and deceptive trade practice by defendants in the amended complaint are *directly contradicted* by the terms of the Asset Purchase Agreement that was made part of the amended complaint. As relevant here, the Agreement provided:

> **4. USE OF NAME**
> Seller will transfer to Buyer the rights it has to use the name "Martinizing Dry Cleaners", thru the assignment of the Franchise agreement with Martinizing in conducting its business. Seller shall execute any necessary documents to [e]ffect this consent upon receipt of payment in full of the Promissory Note hereto attached Marked Exhibit D.
>
> **5. MARTINIZING FRANCHISE**
> Seller will transfer its interest to the Buyer in the Martinizing franchise for these locations upon payment in full of the attached Promissory Note marked exhibit D. Buyer will pay Seller the prorated share of the annual Franchise fee from September 1 thru November 30, 2014. This money to be paid May 31, 2015. Buyer to pay the transfer fee upon transfer of this Franchise to them.

Exhibit D is an interest-free $10,000 Promissory Note dated August 22, 2014, personally guaranteed by Lundell and Carver, in which BC Cleaners promised to pay KM Cleaners $5,000 on October 15, 2014, and $5,000 on November 30, 2014.

-4-

From the plain meaning of these Asset Purchase Agreement provisions, together with the other facts of record, we conclude the following:

First, the Asset Purchase Agreement contractually obligated Kanning and KM Cleaners to assign the franchise agreements to BC Cleaners. The Agreement deferred Kanning's assignment of his franchisee interest in the dry-cleaning stores until November 30, 2014, after defendants finished paying the Exhibit D Promissory Note. In the interim period, the Agreement obligated KM Cleaners to continue paying the annual franchise fee to Martinizing, with BC Cleaners agreeing to reimburse KM Cleaners on May 31, 2015. KM Cleaners' promise to assign valid franchise agreements necessarily included obtaining Martinizing's approval.[2]

Second, until the franchised stores were transferred to BC Cleaners in accordance with the Asset Purchase Agreement, Kanning and KM Cleaners remained Martinizing's authorized franchisee. Martinizing did not allege that it terminated the franchise agreements. See Minn. Stat. § 80C.14, subd. 3. To prevail on its claim of trademark infringement, Martinizing must prove that defendants' conduct was "likely to cause confusion" as to the origin or approval of products or services. See, e.g., Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C., 393 F.3d 755, 759 (8th Cir. 2005), citing 15 U.S.C. § 1125(a)(1)(A). Here, continued operation of the stores under franchise agreements that had not been terminated obviously caused no customer confusion whatsoever. As Lundell put it in his second email, BC Cleaners simply operated the stores "for KM Cleaners" during this interim period. Martinizing does not allege that BC Cleaners wrongfully acted as KM Cleaners' agent, and we have trouble positing what that claim would be. If the interim arrangement violated

---

[2]Under Minnesota law, a franchisor may not "unreasonably withhold consent" to assignment of a franchise if the franchisee to be substituted meets the franchisor's "present qualifications and standards." Minn. Stat. § 80C.14, subd. 5.

the unterminated franchise agreements, any claim would presumably be against franchisee Kanning, not these defendants.

Third, unlike the categorical demand a trademark owner typically directs at an infringing competitor, Martinizing's January 2015 Cease and Desist letter invited BC Cleaners and Lundell to become "an authorized Martinizing franchisee." Implicit in this invitation was the grant of a reasonable period of time for defendants to decide whether to accept. Meanwhile, the stores continued to operate under the KM Cleaners franchise, causing no likelihood of customer confusion, only a possible claim by Martinizing against Kanning for any unpaid franchise fees.

Fourth, on March 1, 2015, Lundell and BC Cleaners replied to Martinizing's Cease and Desist letter. They declined to seek a franchise agreement, stated they were no longer operating the stores, and agreed to comply with the cease and desist demands in Martinizing's January letter. Because BC Cleaners had been using Martinizing's trademarks without approval and agreed to stop, the district court did not abuse its discretion in granting a permanent injunction enjoining BC Cleaners "from any and all further use of [Martinizing's] name and registered marks."

Because the Lanham Act is grounded in equity and bars punitive remedies, "relief in a Lanham Act case should be limited to an injunction if that is sufficient to do equity." Minnesota Pet Breeders, Inc. v. Schell & Kampeter, Inc., 41 F.3d 1242, 1247 (8th Cir. 1994) (citations omitted). Here, Martinizing argued to the district court that it was entitled to money damages (indeed, treble damages) because BC Cleaners operated the franchised stores "as if it were an authorized Martinizing International franchisee," ignoring plain language in the franchise agreements requiring Martinizing's consent. But the documentary record establishes only that BC Cleaners (i) entered into an agreement to acquire the store assets and obtain a valid assignment of the franchise agreements, (ii) operated the stores during the period when the existing franchisee had promised to obtain Martinizing's consent to

-6-

the assignments, and then (iii) vacated the stores when the uncompleted deal fell through. Whether a Lanham Act plaintiff must prove willful infringement to recover money damages is an open question in this circuit after the Lanham Act amendments in 1999. See Masters v. UHS of Del., Inc., 631 F.3d 464, 471 n.2 (8th Cir. 2011). But even if willful infringement is not a prerequisite, on this record we conclude Martinizing failed to prove that BC Cleaners' conduct makes this the kind of exceptional case that would entitle Martinizing to damages, an accounting of infringer profits, or attorneys' fees, in addition to the injunctive relief we have upheld. See 15 U.S.C. § 1117(a); Minn. Stat. § 325D.45. For example, Martinizing made no showing what franchise fees were not paid by Kanning during the months when BC Cleaners was operating the stores under the unterminated agreements.

Turning to the individual defendants, as member-managers of BC Cleaners, a limited liability company, Lundell and Carver enjoyed limited liability for BC Cleaners' liabilities, debts, and obligations -- including torts. See Minn. Stat. § 322B.303, subd. 1. Thus, for Martinizing to prevail against Lundell and Carver, "we must find a theory in the complaint to support imposing personal liability." Marshall, 616 F.3d at 853. The general rule is that a corporate officer or limited liability company member is personally liable for trademark infringement if he or she directly participates in the infringement. See, e.g., United States v. Washington Mint, LLC, 115 F. Supp. 2d 1089, 1106 (D. Minn. 2000), and cases cited. Similarly, for individual liability under the MDTPA, a corporate officer must participate in the corporation's deceptive trade practice. See Avery v. Solargizer Int'l, Inc., 427 N.W.2d 675, 683 (Minn. App. 1988); Ellingson v. World Amusement Serv. Ass'n, 222 N.W. 335, 339 (Minn. 1928).

Here, Lundell and Carver were involved in BC Cleaners, but Martinizing submitted no evidence addressing the extent of their involvement in the continued use of Martinizing trademarks after BC Cleaners entered into the Asset Purchase Agreement but prior to KM Cleaners completing the Agreement by assigning its

franchise agreements to BC Cleaners.  More importantly, as Martinizing failed to prove that it was entitled to monetary remedies against BC Cleaners, these individual defendants are likewise not liable for damages, an accounting for profits, and attorneys' fees.  Nor did the district court abuse its discretion in not granting injunctive relief against the individual defendants, as BC Cleaners had agreed to stop using the trademarks.  Therefore, we affirm the denial of a default judgment against Lundell and Carver.

For the foregoing reasons, the judgment of the district court is affirmed in part and reversed in part.  The case is remanded with directions to enter an amended judgment that retains paragraphs 1.a. and 5, modifies paragraphs 1.b. and 2, and deletes paragraphs 3, 4, and 6 of the Judgment dated December 9, 2015.

_____